Thank you, and may it please the court. My name is Michael Thompson. I represent the defendant appellant John Smith in this case. Mr. Smith appeals his conviction, which resulted from a rather atypical jury deliberation process in the district court. There were a series of jury notes sent out to the court during deliberations, two of which involved jurors who indicated that they were unable to reach a decision, a unanimous verdict, with their fellow jurors. So here's my thought about this. Your primary concern seems to be note four. Correct. But first of all, counsel heartily endorsed the district court's response to note four. And secondly, by my count, looking at the little time stamps in the margin, the response to note four comes in about 40 minutes after the response to note three. And I just wonder, how often do you think the jury has to hear the Silver instruction? I mean, they were hearing it and hearing it. They got it with the original instructions, then they got it again with note three. I find it hard to imagine that they had completely disregarded. And when I add that thought to the notion that we assess instructions as a whole, I'm having trouble seeing this in the coercive light you're suggesting. Do I recall a jury was polled after the verdict? Was it not? It was, Your Honor, but I don't think that can cure the problem. I just asked whether it was polled. It was. And each one answered yes, that was their verdict. Correct. I don't think that can cure the problem, Your Honor. And as to the question of the tidings. Why doesn't he confess that? Well, because obviously it was their verdict, but it's the manner that the verdict was reached that's called into question. No, that's not the way the question was. I'm sorry, Judge Roy. The question is, was that and is that now your verdict? Is that correct? That is correct, Your Honor. And the answer is yes. Yes, it was. But if it is their verdict only because it was reached in a coercive manner, then the verdict is infirm, even if they believe at that time that it's still their verdict. And as to the timing that when the notes were sent, I think that actually exacerbates the problem. Because the jury is first told, reach a verdict if you can, but don't give up your beliefs. After that, within 40 minutes, as Your Honor noted, one of the jurors says, hey, I can't do that. I can't reach a decision. Just academically, how many times juries in the average take a vote before they arrive at a conclusion? I don't think there's any statistics readily available on that. There were some great studies made by two professors, one from the University of Chicago, one from Michigan, pointed out sometimes they counted 11 and 1 for not guilty and finished up 12-0. Certainly. So they obviously have misgivings about it all the way through. But disagreement about the initial vote or any subsequent votes is different from a juror saying, I can't reach a decision after those votes are taken. And when he comes back and does it, reconsiders it in the light of the instruction, and agrees. And it says keep deliberating. I'm having trouble seeing why keep deliberating doesn't mean under the rules that I've given you, which includes talk, but listen, stick to your views, all the things that are there in the instructions. So you're understanding the idea of keep deliberating as give in to other people. And it seems to me that's a, I don't see that. Doesn't part of that instruction include, remember to keep your own counsel? That is the instruction that was given both originally and after the third note. But then when a juror basically said, I can't follow that instruction, the court told him to keep deliberating anyway and to reach a verdict. And I think the sequence of events is what creates the coercive effect there. If the third note hadn't been there, if that had just been, one note, if we ignore the third note, and the fourth note was the first one that came up regarding the deliberation difficulty, and the juror said, hey, I'm unable to do this, and they said, well, keep deliberating and try, I don't think we'd have the same situation. That confuses me even more, to tell you the truth. Because I just don't know why the jury wouldn't understand these instructions as cumulative. Especially, I mean, we're not even talking about the waiver issue, which we probably should be talking about. But on the merits, I don't see what's so coercive about it. Maybe you should talk about waiver, though, because it really seems to me, by the time they have this lengthy back and forth about how they're going to respond to note four, and defense counsel, I recognize not you, but defense counsel says, perfect. I mean, the district judge sure thought that was waiver. And I would like to hear you tell me why it isn't. I think it should be considered more of a forfeiture than a waiver, because the issue of coercion wasn't really considered. It wasn't an identified issue. It wasn't something that there's any reason to believe that the trial counsel even considered when making that decision. But it's endorsement of every word of the judge's response. It does seem to be, yes. I agree with you, Your Honor. However, there's no valid strategic reason for him to have done that if he was actually thinking about whether the jury should be instructed about not giving up their honestly held beliefs. And because there wouldn't have been a valid strategic reason. Instructed again, you mean, about not giving up their honestly held beliefs. Yes, in light of the timing of these notes, instructed again that, hey, you should really try, if you can, do it without doing violence to your own beliefs. And even if it was some sort of waiver, I think it would be a sort of situation where the issue should be considered anyway because of the interest of justice in not having coerced juries. Well, that's an interesting point, because I'm, again, I guess just to ask, I'm not sure why you're better off if we were to consider this under. There's nothing better than plain error for your client that we could use. And it's hard for me to see why the judge, looking at the instructions as a whole, couldn't see this as an entirely appropriate sequence. It's not like it was three days later and he thought the jury would have forgotten the Silverton instruction. And I think it's basically because the effect of the note was to say, even in light of the Silverton instruction, I can't reach a decision here, perhaps because of the Silverton instruction. There's no Allen charge or anything to the jury. There's not, I'm going to lock you up here forever until you come up with a verdict. No, but that may be sort of what the jury is interpreting that response as being when they say, hey, I can't do this. You told me not to do violence to my individual decisions, not to give up my honestly held beliefs. I can't reach a verdict. And the response to that is, hey, you need to keep deliberating and reach a verdict. And I think with that sequence. And by golly, they did. Excuse me? I say, and by golly, they did. They did right thereafter, within 20 minutes of the response. And I think that indicates that they did feel coerced, that at least that one juror did. What gives you the idea that you're talking about which response or which question from the juror? At this point, I'm feeling disrespected? That was the third note, when one of the individuals on the jury indicated they felt disrespected by a juror who was sort of bullying them and telling them that they should reach a certain verdict. You're talking about the one that says, can I get off this jury? I can't make a sound decision? Yes, that's the fourth note. And that came shortly after the silver instruction was read in response to the third note. And I think because the two combined in such a way that they did, it had a coercive effect. And if there are no questions at this time, I'll reserve. Yeah, save a little time. Yeah, you can save a bit for rebuttal. That's fine. Thank you. Mr. Haxel. Good morning. May it please the court, my name is Bolling Haxel, and I represent the United States. Were you the trial attorney? I was one of the trial attorneys, yes, sir. Who made the final argument? The opening close was Ms. Fernandez-Harvath. I made the rebuttal argument. The district court did not commit error, plain or otherwise, when it instructed the jury to continue deliberations. The district court's instruction was neutral, it was non-coercive, and it was merely identical to other instructions this court has previously approved. So there was some back and forth about whether this instruction would somehow be directed exclusively to the juror who sent the note, or whether it would be a generic, hey, jury, keep deliberating. That is correct, Your Honor. And opted for the generic, right? At the defendant's request. The defense attorney was specifically asked a couple of times how he would like it to go to the jury. And he indicated, not her herself, and we knew it was a female juror as she had signed the note, but to the entire jury. There was also discussion about bringing the jury back out. The defense attorney did not want that. In this case, at each stage, the district court actually presented it first to the defendant and his attorney. Said, how would you like to handle this? And ultimately, what was presented was exactly what the defense attorney requested. I wouldn't think the judges want to do that either. I'm sorry? I wouldn't think the judge would be inclined to do it individually either. No, sir. And that really was the crux of the discussion. We spent some time contemplating the best way to handle it. Showing my sensitivity, were these all patterned criminal jury instructions from the 7th, sir? I believe the initial set of instructions were, obviously, as the questions came up, the district judge put them together. Did you rely on the patterned criminal jury instructions in framing the questions, the ones that you gave? I'm afraid I'm just understanding. Did he rely on the patterned criminal jury instructions in framing the ones he bottled up with? I can't say that he specifically pulled them out and dressed them. He may have done that prior to us returning to the courtroom. What about an interesting thing? I was just holding out my sensitivity to those. Sure, generally speaking, Your Honor, we did use the patterns whenever it was appropriate. There were a couple of specific questions. I thought he just repeated the Silverton instruction for number three. But I believe that's correct, Your Honor. And that was from the pattern, or at least the thought. With the additional caveat, his note said, I'm going to direct you again to the Silverton instruction. So there was a preamble, as it were. In addition, Your Honor, the instructions language, as you noted, was expressly approved by defense counsel. Well, defense counsel first responds, as I recall, when the note comes out, when the judge says, here we have this note, everybody gather together. He says words to the effect of, continue to deliberate. That is correct. So I guess Mr. Thompson's point seems to be, that's fine as far as it goes. But when you are reminding the jury about what deliberation actually means, you need to tell them that deliberation means all the things I was ticking off. It means listening to other people. It means respecting the court's instructions. It means being true to your own views, et cetera. I think, first of all, if that's the case, then essentially we'd be required to provide the silver language every single time we go back to the jury and answer a note and tell them to continue deliberations. And that's not what this court has said. And in fact, in DeGraff and Reed, this court noted that, please continue to deliberate. This court said, was not coercive. Its language was just neutral. Such an instruction, quote, carries no plausible potential for coercing the jury to surrender their honest opinions. Their argument is that almost an identical instruction did just that. But that's contrary to this court's prior rulings. It's contrary to what was going on in this case. This was not a situation in which the jury was indicating they were at an impasse or they were deadlocked. It was one juror who indicated that she was having difficulty and essentially was asking to be excused from the case. This was not a deadlock situation. And that is when this court has said that silver is necessary. But as you noted, it had just been given to them a short time before. And they're in a catch-22. They want, on the one hand, to tether their argument to the previous note. There's no indication that the two were related in any way. But when they do so, the silver language was there. So they really are stuck between those two arguments. So let me talk to you for a minute about waiver. Because the point, again, that Mr. Thompson is making is that the difference between waiver and forfeiture comes up when there's a point that wasn't overtly discussed and that was overlooked by mistake. And so he dissects this. And he says, well, yes, we liked the instruction. But nobody realized that there was a potential coercion issue. And so that sounds more like forfeiture than waiver. The defendant's argument really stands waiver on his head. It basically says any omission can never be waived as long as the district court didn't expressly address it prior to offering the opportunity to the defense counsel to correct it. And that's simply not this court's prior rulings. This court really distinguishes between a failure to object and an approval. And even in the cases the defense cites in the reply brief, such as Hamilton, that was a failure to object to one of 50 pages of an instruction. And in that case, this court noted that it was unclear that the defendant agreed at all to the instruction. That's where this court distinguishes. Under the omission theory, they're putting forth, even an instruction the defense writes and tenders to the court cannot be waiver if they fail to address an argument. And that simply is contrary to this court's prior holdings about waiver, or even forfeiture. Unless the court has other questions, the government respectfully asks the court to affirm defendant's conviction and sentence. Thank you. Thank you very much. Mr. Thompson? Yes, Your Honor. And I would put to the court that this was not as neutral of an instruction as the government would like the court to believe because of the way it was worded. It wasn't simply continue to deliberate. In response to the juror's note, which says I cannot reach a sound decision on this case, the court said each of you has been chosen as a juror, each of you as part of the jury that has been picked to decide this case. So the juror says, I can't decide. And the court says, you've been picked to decide. Continue to deliberate. So in that respect. To use from my native Texas, y'all have been picked to decide, all of you. Sure. Yeah, it wasn't directed specifically to the juror, to the one juror, but it did say in response to juror note four, which was written by that specific juror. But the other people in the room might not know that. They might think, well, for some reason the court's decided to remind us again that we're the jury. I'm not sure that makes it better, Your Honor. In regards to that one juror, it has to be a unanimous verdict. That juror is saying, we can't reach a unanimous verdict because I can't decide. And the court says, you have to do it anyway. And I think under those circumstances, that is coercive. And it's the kind of thing that wasn't waived by the even enthusiastic approval of the instruction that was given. So we ask that the conviction be overturned and reversed. All right, thank you very much. Thanks to the government as well. We'll take the case under advisement.